**Pilar UMANA–FOWLER, Plaintiff,**

v.

**NCL (BAHAMAS) LTD., Defendant.**

**Case No. 13–23491–Civ.**

United States District Court,
S.D. Florida.

Signed Sept. 18, 2014.

Filed Sept. 19, 2014.

Jacob John Munch, Munch & Munch PA, Tampa, FL, for Plaintiff.

Jeffrey Eric Foreman, Lisandra Guerrero, Andrew Douglas Craven, Foreman Friedman, PA, Miami, FL, for Defendant.

### *ORDER*

KATHLEEN M. WILLIAMS, District Judge.

**THIS MATTER** is before the Court on Defendant's motion in limine to preclude testimony of Plaintiff's expert Randall Jaques. (DE 41). Plaintiff responded in opposition. (DE 43). Plaintiff seeks to introduce Jaques as a crowd control ex-

pert. Jaques's testimony supports Plaintiff's theory that her injury resulted from NCL's lack of crowd control and supervision. Defendant asks the Court to exclude Jaques on the grounds that he is not qualified to competently testify regarding the opinions rendered in his report, that his methodology is not sufficiently reliable, and that his testimony would not assist the trier of fact.

Expert testimony must be both reliable and relevant. *U.S. v. Frazier,* 387 F.3d 1244, 1260 (11th Cir.2004). Plaintiff is correct that Jaques has been qualified to testify as an expert in the past.[1] That is not the end of the qualification analysis, however, because the proffered expert must be an expert in the subject matter that he proposes to testify about. *Bowers v. Norfolk S. Corp.,* 537 F.Supp.2d 1343, 1376 (M.D.Ga.2007) ("Rule 702 and *Daubert* still require that the area of the witness's competence match the subject matter of the witness's testimony."). Jaques identified two cases[2] where he was retained as a crowd control expert and further testified that he has been retained in three other cases where he has not yet drafted an expert report. (DE 41–2 Jaques Depo. 13:5–15:15).

The record before the Court demonstrates that Jaques has never been qualified as a crowd control expert in the Southern District and has never offered an opinion in a case where a lack of crowd control led to pushing that caused an injury. In *Rapoport v. Regent Seven Seas,* CASE NO. 08–CV–60629 (S.D.Fla.2009), the court did not qualify Jaques as an expert and the case settled before any expert testimony was presented. Similar-

---

1. *See, e.g., Bishun v. Royal Caribbean Cruises, Ltd.,* No. 12–24306–CMA (S.D.Fla. October 2, 2013) (allowing Jaques to testify on a question by question basis).

2. *Rapoport v. Regent Seven Seas,* CASE NO. 08–CV–60629 (S.D.Fla.2009) and *Ishmael v. Royal Caribbean Cruises, Ltd.,* Case No. 11–CV–24334 (S.D.Fla.2012).

ly, in *Ishmael v. Royal Caribbean Cruises, Ltd.,* Case No. 11–CV–24334 (S.D.Fla. 2012), the case settled while a motion to exclude Jaques remained pending.

The court precluded Jaques's testimony in *Mendel v. Royal Caribbean Cruises, Ltd.,* Case No. 10–CV–23398 (S.D.Fla. 2012) as to all topics except his measurement of distances using a tape measure. In that case, Magistrate Judge McAliley recommended excluding Jaques's opinions because they were not based on a reliable methodology and would not be helpful to the jury because they concerned issues of common understanding. *Id.* at DE 145. As in *Mendel,* the Court focuses the inquiry in this case on Jaques's reliability and whether his testimony will help the trier of fact.

The question of whether an expert's testimony is reliable depends on the facts and circumstances of the particular case. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 158, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Accordingly, the first issue before the Court is whether Jaques adequately applied appropriate methods in this case. If his methods demonstrate that Jaques's testimony is reliable, the second issue is whether his opinions will assist the trier of fact.

■ The party offering the expert bears the burden of establishing reliability and helpfulness. *Frazier,* 387 F.3d at 1260. Proposed expert testimony must be supported by appropriate validation, what the Supreme Court has characterized as "good grounds based on what is known." *Id.* at 1261 (quoting *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). A court cannot admit an expert who simply states that he used the "scientific method" to reach his conclusions; more is required. *See Hughes v. Kia Motors Corp.,* 766 F.3d

1317 (11th Cir.2014) (affirming district court's exclusion of expert testimony).

■ Similarly, an expert cannot rely on "experience" without explaining in detail how the experience and other materials consulted support the opinion rendered. *Frazier,* 387 F.3d at 1265. Because the Court's "gatekeeping function requires more than simply taking the expert's word for it," the burden is on the party offering the expert testifying based on experience "to explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." *Id.* at 1261, 1265. Courts are cautioned not to admit speculation, conjecture, or inference and a court properly excludes expert opinion when a "leap from data to opinion [is] too great." *Hughes,* 766 F.3d at 1331; *Rider v. Sandoz Pharm. Corp.,* 295 F.3d 1194, 1202 (11th Cir.2002).

Helpful expert testimony is admissible because it illuminates matters beyond the understanding of the average lay person. *Frazier,* 387 F.3d at 1262. Expert testimony that "offers nothing more than what lawyers for the parties can argue in closing arguments" generally will not assist the trier of fact and will be excluded. *Id.* at 1262–63. An expert witness may testify as to his opinion on an ultimate issue of fact, but he "may not testify as to his opinion regarding ultimate legal conclusions." *United States v. Delatorre,* 308 Fed.Appx. 380, 383 (11th Cir.2009). Furthermore, merely telling the jury what result to reach is unhelpful and inappropriate. *Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir.1990).

■ The introductory paragraph to Jaques's CV states that "[f]or the cases [he is] retained in, [Jaques is] fully prepared to conduct site inspections of the scene, take photographs, measurements, and col-

lect data under the *Daubert* Rule in U.S. Federal Courts." (DE 43–1 at 5). Jaques did not do any of these things in this case.

Jaques studied the deposition of Plaintiff, the deposition of her son, the affidavit of Frank Fowler, and some portion of NCL's corporate representative's deposition. (DE 43–1 at 2; DE 41–2 Jaques Depo. 4:21–5:1, 6:20–7:2). He did not review the written discovery responses in the case. (*Id.* at 7:15–7:19). Furthermore, Jaques did not interview the crew members who responded to Plaintiffs injury, he did not interview the unidentified man pushing a stroller who actually bumped into Plaintiff, and he does not claim to have reviewed the safety policies that were in force when the accident took place. (DE 41–2 Jaques Depo. 8:17–8:21). Jaques is conversant in the STCW ("Standards of Training Certification and Watchkeeping for Seafarers"), but did nothing to evaluate what steps NCL took to implement the STCW on Great Stirrup Cay, Bahamas. (DE 41–2 Jaques Depo. 8:17–8:21). He has not visited the scene in more than ten years, has not reviewed photographs of the scene, and does not know what might have changed at the scene since it was "reconstructed" some years ago. (*Id.* at 23:12–25;62:1–63:10).

Jaques used the information he reviewed—mostly deposition testimony of Plaintiff's family—and "conducted an analysis" of Plaintiff's accident, but he does not elaborate as to how that analysis was conducted, how his experience informed that analysis, and what steps he took to verify the results of his analysis. (DE 43–1 at 2; *see also* DE 41–2 Jaques Depo. 44:16–25; 92:18–93:2); *Frazier*, 387 F.3d at 1265. Jaques claimed that he applied "reliable principles and methods learned from over 25 years of experience to make findings within a reasonable degree of scientific certainty." (DE 43–1 at 2–3). This is not enough. If admissibility could be established merely by the *ipse dixit* of a qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong. *Frazier*, 387 F.3d at 1261. The Eleventh Circuit specifically admonishes courts not to conflate the two. *Id.* at 1260.

█ Even if Jaques's opinion were reliable, it is not helpful. This case is about an accident where one passenger bumped into another. Jaques testified that he does not dispute Frank Fowler Jr.'s testimony that nobody was pushing into or colliding with the unidentified man who ran into Plaintiff. (DE 41–2 Jaques Depo. 96:2–10). Nevertheless, Jaques and Plaintiff contend that crowd control is at the heart of this dispute.

In response to questioning regarding what crowd control training the crew members at Great Stirrup Cay received, Jaques replied "I don't know what they received. I know what they're supposed to receive, but I don't know if they received it." (DE 41–2 Jaques Depo. 86:5–7). Plaintiff asserts that "Randall Jaques' opinions will assist the jury in understanding NCL's private island crowd control (or lack thereof) policies and what proper crowd control policy should be," but Jaques did not provide testimony concerning a proper crowd control policy for Great Stirrup Cay that would illustrate the standard of care. (DE 43 at 2). He vaguely testified that usually there are "stanchions or a barricade" to allow passengers to queue up, but he offered no opinion on precisely how the queueing should be done on this island except to suggest that perhaps there should have been a queue starting somewhere between a couple of hundred feet to one thousand yards from the tender pavilion. (DE 41–2 Jaques Depo. 105:1–6; 72:17–73:2). Furthermore, Jaques did not consider the current layout of

the island and was uncertain about whether and where stanchions were placed on the day of the accident. *Id.* at 73:8–9; 81:4–82:21; 104:8–105:13.

In light of Jaques's testimony that one person—who was some distance removed from any crowd—bumped into Plaintiff, it is not obvious how expert testimony regarding crowd control is helpful to the trier of fact. (DE 41–2 Jaques Depo. 57:8–10). Yet the gist of Jaques's expert opinion is that NCL violated the standard of care because it failed to control a crowd that somehow caused Plaintiff's injury. Such expert opinion is not helpful and the risk is too great that the trier of fact will be confused or place undue weight on such an opinion. *Montgomery,* 898 F.2d at 1541. Accordingly, the motion to exclude Randall Jaques (DE 41) is **GRANTED.**